```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

NIPPONKOA INSURANCE CO., LTD.    §
and TOSHIBA INTERNATIONAL        §
CORPORATION,                     §
                                 §
              Plaintiffs,        §
                                 §
VS.                              §   CIVIL ACTION H-10-0284
                                 §
PORT TERMINAL RAILROAD           §
ASSOCIATION,                     §
                                 §
              Defendant.         §
```

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, seeking under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, to recover up to or more than $2,600,000 for damage to a large industrial generator during rail transit within the Port of Houston, is Claimant Caterpillar Americas, C.V.'s ("Caterpillar's") opposed motion to intervene (#22).

**I.  Factual Allegations of Plaintiffs' Amended Complaint**

According to the Amended Complaint (#11), Plaintiff NipponKoa Insurance Company, Ltd. ("NipponKoa") is an insurance company incorporated in Japan, with its principal place of business in Tokyo, Japan, and the insurer of the shipment in dispute. Plaintiff Toshiba International Corporation ("TIC"), a subsidiary of Toshiba Corporation in Japan, is a corporation organized under the laws of California, with its principal place of business in Texas.  TIC develops and sells large industrial generators.  It was the shipper and owner of the shipment at issue.  Defendant PTRA is

organized and exists under the laws of Texas with its principal place of business in Houston, Texas.  PTRA operates trains in the Port of Houston and controls, operates, maintains and/or manages the rail tracks at the American Yard in Houston.

Plaintiffs sue on their own behalf and as agent, trustee, assignee and/or subrogee on behalf of and for the interest of all parties interested in, and who were injured as a result of the damage to, the shipment.

Plaintiffs allege that a Steam Generating System for production of electricity was shipped in good condition on or about December 1, 2008 from Yokohama, Japan and delivered to the M/V Rickmers Hamburg for transport to Houston, Texas.  It arrived in Houston on or about December 31, 2008, and the Generator Assembly component of the Steam Generating Set ("the shipment") was delivered in good order and condition to the care and custody of, and was accepted by, PTRA.  PTRA agreed to transport and carry the shipment within the Port of Houston, for ultimate transport to Hastings, Nebraska.

Plaintiffs assert that on or about February 1, 2009 around noon in clear weather, the shipment was resting at the American Yard when a PTRA-operated train was negligently moved on the track next to it, carrying a variety of cargo, including an oversized Caterpillar dump truck weighing approximately 245,000 kilograms. The Caterpillar dump truck struck the generator and substantially damaged it.  Plaintiffs claim that PTRA was negligent in operating

the moving train and/or operating the American Yard, particularly because the train was traveling on the wrong track and the operator did not exercise due care in making sure there was sufficient distance between the Caterpillar dump truck and the shipment. PTRA delivered the shipment damaged up to and exceeding $2,600,000, in violation of its obligations and duties as a carrier of merchandise for hire to perform its services in a careful, workmanlike manner. All portions of the carriage were part of an international and interstate transportation.

## II. Caterpillar's Motion to Intervene (#22)

Moving to intervene permissively under Federal Rule of Civil Procedure 24(b)(1)(B), Claimant Caterpillar, seeking to recover for damages to its cargo of a 797B Off-Highway Truck and related components in Houston on February 1, 2009, argues that it has a valid claim for cargo damage against PTRA that arises from the same occurrence described in Plaintiffs' complaint and shares common facts and legal issues. Moreover, Caterpillar maintains that no other party here can adequately represent its interests. Caterpillar further states that it is not aware of any undue delay or prejudice to the adjudication of the parties's rights that would occur if it is permitted to intervene, while allowing it to intervene would prevent duplicative litigation, inconsistent rulings and unnecessary costs, would conserve judicial resources, and would promote comprehensive disposition of litigation for all of the parties and interests.

The Original Complaint in Intervention attached to Caterpillar's motion (#22-1) states that the Court has diversity jurisdiction over its claim under 28 U.S.C. § 1332(a)(2). The common factual and legal issues with the main action are (1) the collision of the railcar on which Caterpillar's cargo was stowed with the rail car stowing Plaintiffs' steam generator and (2) Defendants' alleged negligence.

### III. Relevant Law

**A. Intervention and Fed. R. Civ. P. 24**

"The purpose of intervention is to admit, by leave of court, a person who is not an original party into a proceeding. The intervening party then becomes a 'party' for the purpose of protecting some right or interest alleged by the intervenor to be affected by the proceeding." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994), *cert. denied*, 513 U.S. 1014 (1994). Intervention "is intended to prevent multiple lawsuits where common questions of law or fact are involved, but is not intended to allow the creation of whole new lawsuits by the intervenors." *Id.*

Federal Rule of Civil Procedure 24 establishes two kinds of intervention: intervention of right (Rule 24(a)) and permissive intervention (Rule 24(b)). Here Caterpillar seeks permissive intervention.

Federal Rule of Civil Procedure 24(b)(1) provides, "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has

a claim or defense that shares with the main action a common question of law or fact." To intervene permissibly a party must have independent jurisdictional grounds except when the action is a class action. *Harris v. Amoco Production Co.*, 768 F.2d 669, 675 (5th Cir. 1985)(it is "well established" that "a party must have independent jurisdictional grounds to intervene permissibly under Rule 24(b)"); *Johnson v. Riverland Levee Dist.*, 117 F.2d 711, 714-15 (8th Cir. 1941); *Moore's Federal Practice* § 24.11 (Matthew Bender & Co. 2010). Rule 24(b)(3) states, "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues. *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989)("Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties."); *Cal Data Systems, Inc. v. NCS Pearson, Inc.*, Civ. A. No. H-07-1390, 2008 WL 1730539, *2 (S.D. Tex. Apr. 10, 2008). Where permissive intervention would further complicate the case without any added benefit, the court may deny a motion to intervene. *Farouk Systems,*

*Inc. v. Costco Wholesale Corp.*, Civ. A. No. 09-cv-3499, 2010 WL 1576690, *3 (S.D. Tex. Apr. 20, 2010)(refusing permissive intervention because it "could add considerable complication and delay to this case."). Permissive intervention is at the discretion of the court even if the potential intervenor satisfies the requirements of Rule 24(b). *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F. 2d 1285, 1289 (5th Cir. 1987); *Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006).

**B. Carmack Amendment**

The Carmack Amendment, enacted in 1906 as part of the former Interstate Commerce Act, altered and recodified through the years, and now codified at 49 U.S.C. § 11706, created a national scheme to compensate shippers for goods damaged or lost during interstate shipping. *Schoenmann Produce Co. v. Burlington Northern and Santa Fe Railway Company*, 420 F. Supp. 2d 757, 759 (S.D. Tex. 2006), *citing New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131 (1953). Congress intended the Carmack Amendment "to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co.*, 376 F. Supp. 2d 715, 719 (S.D. Tex. 2005), *citing Hoskins v. Bekins Van Lines*, 343 F.3d 769, 776-78 (5th Cir. 2003). The complete preemption doctrine applies to cases for common carrier liability under it, and thus common law and state-law claims such as negligence and breach of contract are preempted. *Id., citing*

*Hoskins, Inc.*, 343 F.3d at 772-78.[1]  *See, e.g., American Railway Express Co. v. Levee*, 263 U.S. 19 (1923); *Air Products & Chemicals, Inc. v. Illinois Central Gulf Railroad Co.*, 721 F.2d 483 (5th Cir. 1983)("the Carmack Amendment, as judicially interpreted, provides an exclusive remedy for a breach of contract of carriage provided by a bill of lading . . . ").[2]

Section 11706(a) provides in relevant part,

> (a) A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation Board] . . . shall issue a receipt or bill of lading for property it receives for transportation . . . [and is] liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this subsection is for the actual loss or injury to the property caused by--
>
> > (1) the receiving rail carrier;
> >
> > (2) the delivering carrier; or
> >
> > (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign

---

[1] The *Hoskins* panel explained that the preemptive effect of the Carmack Amendment is based on Congress's intent in enacting it, i.e., to provide a uniform, national remedy against common carriers, which "were being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own State, or for a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one State to another."  *Id.* at 776, *quoting Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913).

[2] No one contends that any of the five common law defenses (act of God, act of shipper, inherent vice, public enemy, and public authority) applies here.

>    country when transported under a through bill
>    of lading.
>
> Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier. A delivering rail carrier is deemed to be the rail carrier performing the line-haul transportation nearest the destination, but does not include a carrier providing only a switching service at the destination.
>
> (b) The rail carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person.
>
> (c) (1) A rail carrier of passengers may not limit its liability imposed under subsection (a) of this section except as provided in this subsection. A limitation of liability or of the amount of recovery or representation or agreement in a receipt, bill of lading, contract, or rule in violation of this section is void. . . .
>
>> (3) A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part may establish rates for transportation of property under which--
>>
>>> (A) the liability of the rail carrier for such property is limited to a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier; or
>>>
>>> (B) specified amounts are deducted, pursuant to a written agreement between the shipper and the carrier, from any claim against the carrier with respect to the transportation of such property. . . .

49 U.S.C. § 11706.

Courts have held that the requirement that the carrier must issue a receipt or bill of lading before it moves the cargo may be met by an agreement regarding the major terms of the contract of carriage before shipment as long as the shipper manifests assent to the terms of the bill before the shipment began and where a course of dealings indicates a pricing agreement and rate schedule had been in place between the parties for years. *Hyundai Corp. v. Contractors Cargo Co.*, Civ. A. No. H-07-2625, 2008 WL 4178188, *4 (S.D. Tex. Sept. 5, 2008).

To make a *prima facie* case for damage to goods arising from the interstate transportation of goods by a common carrier, the shipper must show (1) delivery of the goods in good condition, (2) receipt by the consignee of damaged goods, and (3) the amount of damages. *Gulf Rice,* 376 F. Supp. 2d at 719, *citing Hoskins*, 343 F.3d at 778. *See also Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)("[U]nder federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages."). After the shipper makes a *prima facie* case of negligence, for purposes of this action[3] the carrier may assert as an affirmative defense that

---

[3] Usually, after a *prima facie* case is made by the shipper, the carrier can overcome the presumption of negligence by demonstrating that it was not negligent and that the damage was due to the inherent nature of the goods or attributable to an act of God, public enemy, the shipper, or public authority. *Mo. Pac. R.R. v/ Elmore & Stahl*, 377 U.S. 134, 137 (1964). Here, however, the issue is whether the carrier limited its liability.

an agreed upon limitation of liability on alternative terms applies. *Schoenmann Produce*, 420 F. Supp. 2d at 762. Even if the shipper and carrier have contracted for different rates and conditions, the Carmack Amendment still preempts all state law and common law claims for goods damaged by the carrier. *Id.* at 762-63, *citing Gulf Rice*, 376 F. Supp. 2d at 719.

In what has become known as the "*Hughes* test," developed by the Seventh Circuit in 1987 and adopted by the Fifth Circuit, to limit its liability under the Carmack Amendment a carrier must (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtain the shipper's written agreement as to its choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading before the transport. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987), *cert. denied*, 485 U.S. 913 (1988); *adopted, Rohner Gehrig Co., Inc. v. Tri-State Motor Transit*, 950 F.2d 1079, 1082 (5th Cir. 1992)(*en banc*)(adopting *Hughes* test for limitation of liability). The Fifth Circuit explained in *Rohner Gehrig*,

> . . . [U]nder the I.C.C. scheme, if a carrier desires to limit its liability it must file one or more tariffs that set forth terms and conditions of shipment, freight rates available, and information relevant to shipping, including limitation of liability. Central to the scheme of limitation of liability is the requirement that each rate listed in the tariffs specify a "released rate," which is the maximum dollar liability per unit of weight for which the carrier will be liable. Also central to the I.C.C.'s liability limitation scheme is the

>       requirement that there be a written agreement between the
>       shipper and the carrier.  The B.O.L. [bill of lading] is
>       the form most frequently used for such agreements.  If
>       the carrier is to limit its liability, the written
>       agreement between shipper and carrier must contain a so-
>       called "inadvertence clause." The inadvertence clause
>       specifies the released rate and states that such rate
>       will apply unless the shipper declares otherwise.

*Rohner Gehrig*, 950 F.3d at 1082.

With deregulation, the first prong of the *Hughes* test has been modified since the Interstate Commerce Commission was replaced by the Surface Transportation Board under the ICC Termination Act of 1995, 49 U.S.C. § 702.  *Gulf Rice*, 376 F. Supp. 2d at 721. Tariffs are no longer filed, so instead the shipper now bears the burden of requesting a copy of the carrier's tariff.  *Id., citing Firemen's Fund McGee v. Landstar Ranger*, 250 F. Supp. 2d 684, 689 (S.D. Tex. 2003), *citing EFS National Bank v. Averitt Express, Inc.*, 164 F. Supp. 2d 994, 1002 (W.D. Tenn. 2001).  Regarding the third prong, a "fair opportunity means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to make a deliberate and a well informed choice. . . . In addition, any limitation of liability must be brought to the attention of the shipper before the contract is signed, and the shipper must be given a choice to contract, with or without, the limitation of liability in the movement of his goods." *Hughes*, 829 F.2d at 1419-20.  Finally, the Fifth Circuit has held that a bill of lading that substantially, but not strictly, complies with the related tariffs filed by the carrier may support limitation of the carrier's liability.  *Rohner Gehrig*

*Co., Inc. v. Tri-State Motor Transit*, 950 F.2d 1079, 1083 (5th Cir. 1992). The sophistication of the shipper for purposes of the "reasonable opportunity" prong has no relevance to substantial compliance of the carrier's bill of lading with its tariff, nor with the second and third prongs of the *Hughes* test. *Id.* at 1083. Among factors to consider in determining whether the carrier gave the shipper a "fair opportunity to choose among various levels of liability" are whether the limitation clause was in boldface type or set off in an enclosed block or box, printed in distinctively large or small type size, and conspicuously located. *Rohner Gehrig*, 950 F.2d at 1084. The carrier has the burden of proving that it has met the four *Hughes* requirements. *Id.* at 1081. Moreover, the general rule of contract construction that an ambiguous contract is to be construed against the drafter (in limitation of liability under the Carmack Amendment, the carrier) applies. *Hyundai Corp. (USA), v. Contractors Cargo Co.*, No. H-07-2625, 2008 WL 4178188, *5 (S.D. Tex. 2008).

### Response to Caterpillar's Motion (#23)

NipponKoa did not file a response to the motion.

In its response in opposition, PTRA points out that Caterpillar's motion is for permissive intervention under Rule 24(b)(1)(B), not intervention of right under Rule 24(a). Rule 24(b)(1)(B) recites, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In the Fifth

Circuit, unlike a denial of a motion to intervene of right, a denial of a motion for permissive intervention is not appealable unless there is an abuse of discretion. *Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984); *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324 (5th Cir. 1982).

PTRA insists the only common question of law or fact is the accident, i.e., that TIC's generator/transformer, while in PTRA's possession, collided with the Caterpillar mining machines. The focus on this case is on limitation of liability under the Carmack Amendment. Plaintiffs and Caterpillar have different bills of lading from different railroads (BNSF and Norfolk Southern Railway (Ex. A to #23), respectively). They also claim very different kinds and amounts of damages (approximately $2,600,000 and $1,103,112.14) to very different types of equipment (generator/transformer manufactured in Japan and in route to Halloran, NE, and Caterpillar mining machines shipped from Decatur, IL to Houston Texas, to the Jacintoport Terminal, and ultimately to Antofagasta, Chile, respectively), and would thus require different experts to testify to reasonable costs of repair. The only thing in common is the facts of the accident.

### Court's Decision

After considering the matter, this Court agrees with PTRA and finds that the issues not in common are those that make up most of the remaining issues. PTRA has conceded that the accident was its fault. The focus is therefore on the extent and amount of damages

to the cargoes involved.  That Caterpillar's claims would involve a entirely different bill of lading, different kinds and amounts in damages (approximately $2,600,000 and $1,103,112.14) to very different types of equipment (generator/transformer manufactured in Japan and in route to Halloran, NE, and Caterpillar mining machines shipped from Decatur, IL to Houston Texas, to the Jacintoport Terminal, and ultimately to Antofagasta, Chile, respectively), different discovery and different experts, thus complicating this lawsuit and delaying the litigation, leads the Court to conclude that the motion to intervene should be denied.  Where permissive intervention would further complicate the case without any added benefit, the court may deny a motion to intervene. *Farouk Systems, Inc. v. Costco Wholesale Corp.*, Civ. A. No. 09-cv-3499, 2010 WL 1576690, *3 (S.D. Tex. Apr. 20, 2010)(refusing permissive intervention because it "could add considerable complication and delay to this case.").  The Court finds that permitting intervention here would only serve to complicate this lawsuit without any added benefit.

    Accordingly, the Court

    ORDERS that Caterpillar's motion to intervene (#22) is DENIED.

    **SIGNED** at Houston, Texas, this  23rd  day of  March , 2011.

                                          MELINDA HARMON
                             UNITED STATES DISTRICT JUDGE